**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 14-cv-1637-WJM-MEH

COOL SUNSHINE HEATING & AIR CONDITIONING, INC.,

     Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

     Defendant.

---

### ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT

---

     Plaintiff Cool Sunshine Heating & Air Conditioning, Inc. ("Plaintiff" or "Cool Sunshine") brings this action against its insurance provider, American Family Mutual Insurance Company ("American Family"), arising out of American Family's refusal to provide a defense for Cool Sunshine in a construction defect case.  (ECF No. 3.) Before the Court are the parties' early cross-motions for summary judgment on whether American Family owed Cool Sunshine a duty to defend.  (ECF Nos. 25 & 27.)  For the reasons set forth below, the Court grants American Family's Motion and denies Cool Sunshine's Motion.

### I.  LEGAL STANDARD

     Summary judgment is appropriate only if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine

dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  BACKGROUND

Plaintiff Cool Sunshine is a Colorado construction company that is insured by American Family under a commercial general liability coverage policy of insurance and commercial property coverage policy (the "Policy").  (ECF No. 26-1.)  The Policy was in effect at all times relevant to this action.  (ECF No. 5 ¶ 10.)

In the summer of 2011, Cool Sunshine was hired as a subcontractor by Ellis Construction ("Ellis") to work on a home in Boulder, Colorado (the "Residence") owned by Gary Doberman and Ellen Robertson (the "Homeowners").  (ECF No. 5 ¶ 8.)  The Homeowners took issue with much of the work done on the Residence, and negotiated with Ellis to resolve many of the issues.  (ECF No. 26-2.)  When negotiations broke down, on September 7, 2011, the Homeowners sent Ellis a letter in compliance with the

Colorado Construction Defect Action Reform Act (the "CDARA Letter")[1].  Among other

defects at the Residence, the CDARA letter specifically discussed problems with the

SEERS 13 compressor that had been installed at the Residence by Cool Sunshine.  (*Id.*

at 3.)  Specifically, the CDARA Letter stated that the compressor did not meet Boulder

City Code for noise levels, and that it was installed to run on only one stage.  (*Id.*)  The

Homeowners requested that the SEERS 13 compressor be replaced with a SEERS 20

compressor, which is quiet enough to meet the City Code and runs on two stages.  (*Id.*)

The CDARA Letter states that the SEERS 13 compressor is not "appropriate for the

system" that Ellis sold to the Homeowners.  (*Id.*)

On November 18, 2011, the Homeowners filed a lawsuit against Ellis and many

of the sub-contractors who worked on the Residence, including Cool Sunshine (the

"Underlying Litigation").  (ECF No. 26-3.)  The complaint filed in that lawsuit (the

"Underlying Complaint") alleged that Cool Sunshine "acted as a subcontractor to Ellis

Construction with respect to certain heat and air conditioning system work at the

Residence."  (*Id.* ¶ 42.)  It further alleges that the air conditioner compressors installed

in the Residence do not meet code with respect to the amount of noise emitted, and the

compressors do not function properly or are not appropriate for the "high-end" air

conditioning system that the Homeowners believed they had purchased.  (*Id.* ¶ 50(j)-

(k).)  The Underlying Complaint states that these defects are due to negligent or

---

[1]  The CDARA was enacted to streamline construction defect litigation, and requires a homeowner to submit a letter to the general contractor specifically identifying any alleged defects.  *See* Colo. Rev. Stat. § 13-20-802.5; *CLPF-Parkridge One, L.P. v. Harwell Investments, Inc.*, 105 P.3d 658, 664 (Colo. 2005) (discussing the purpose of CDARA).  The general contractor then has thirty days to inspect the premises and thirty additional days to make a written offer to remedy the defect or settle the claim.  Colo. Rev. Stat. § 13-20-803.5.

substandard construction practices, supervision, a substandard product, a product that does not meet specification, or a product that was negligently misrepresented.  (*Id.* ¶ 50(k).)  In addition to the claims brought against Ellis and its principal, the Homeowners bring claims against all Defendants for breach of implied warranty and negligence.  (*Id.* ¶¶ 62-68.)  As damages, the Homeowners seek the costs to professionally repair, replace, or remediate all defects, complete any remaining construction work, loss of use of the Residence, their past and future lost income, their medical expenses associated with their stress and anxiety, and other non-economic damages.  (*Id.* p. 14.)

Cool Sunshine was served with the Underlying Complaint on November 22, 2011.  (ECF No. 5 ¶ 13.)  It then tendered a copy to American Family.  (*Id.* ¶ 14.)  On December 7, 2011, American Family denied coverage and declined to provide a defense for Cool Sunshine.  (*Id.* ¶ 15; ECF No. 29-3.)

On November 6, 2012, Ellis filed a cross-claim against its subcontractors, including Cool Sunshine.  (ECF No. 29-4.)  It alleges that Cool Sunshine breached its contract with Ellis, or breached an express warranty that its work would be conducted in a workmanlike manner, and seeks indemnification and contribution for any amounts that Ellis has to pay the Homeowners based on the work performed by the subcontractors.[2]  (*Id.*)  Cool Sunshine later settled the claims against it, and the claims have been dismissed with prejudice.  (ECF No. 5 ¶ 24.)

Based on the denial of coverage, Cool Sunshine brought this lawsuit seeking a declaratory judgment that American Family had a duty to provide a defense against the

---

[2]  There is no evidence that Cool Sunshine ever tendered this cross-claim to American Family.

4

Homeowners' lawsuit, and for breach of contract based on the failure to conduct a reasonable investigation into the Homeowners' claims, to provide a defense against the claims, or indemnify Cool Sunshine for the settlement.  (ECF No. 5 at 5-6.)  Cool Sunshine also brings claims against American Family for statutory and common law bad faith breach of contract and for violation of the Colorado Consumer Protection Act.  (*Id.* at 7-8.)  However, the only issue raised in the instant Motions is whether American Family had a duty to provide Cool Sunshine a defense against the Homeowners' claims. (ECF Nos. 25 & 27.)

### III.  ANALYSIS

In Colorado, an insurance company owes its insured a "duty to affirmatively defend its insured against pending claims." *Constitution Assoc. v. N.H. Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996).  "An insurer seeking to avoid its duty to defend an insured bears a heavy burden." *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991).  "[T]he insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 614 (Colo. 1999) (internal citations and quotations omitted).  "An insurer has a duty to defend unless it can show that: (1) the allegations in the complaint against the insured describe only situations which are within the policy exclusions; and (2) there is no factual or legal basis on which the insurer might be held liable to indemnify the insured." *TerraMatrix, Inc. v. U.S. Fire Ins. Co.*, 939 P.2d 483, 486 (Colo. App. 1997). The obligation to defend is not determined by the insured's actual liability to the claimant; instead, the duty to defend arises when the allegations in the complaint, if sustained, would impose a liability covered by the policy.  *See Hecla Mining*, 811 P.2d

5

at 1089.

A court's determination of whether an insurer has a duty to defend is confined to its examination of the four corners of the underlying complaint. *See Weitz Co., LLC v. Mid-Century Ins. Co.*, 181 P.3d 309, 311 (Colo. App. 2007) (internal quotations and citations omitted). "[T]he duty to defend must be determined based solely on a comparison of the allegations of the complaint made against the insured with the insuring provisions of the policy." *Employers' Fire Ins. Co. v. W. Guar. Fund Serv.*, 924 P.2d 1107, 1110 (Colo. App. 1996). Because determination of a duty to defend is based solely on the allegations in the underlying pleading and the terms of the insurance contract, whether a duty to defend exists is a question of law. *See Bumpers v. Guarantee Trust Life Ins. Co.*, 826 P.2d 358, 360 (Colo. App. 1991); *see also Apartment Inv. and Mgmt. Co. (AIMCO) v. Nutmeg Ins. Co.*, 593 F.3d 1188, 1193 (10th Cir. 2010).

The interpretation of the policy provisions is "based upon the principles of contract interpretation." *Hecla Mining*, 811 P.2d at 1090 (internal citations omitted). The words of the contract should be given their plain meaning according to common usage, and strained constructions should be avoided. *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 18 (Colo. 1990). Clauses or phrases should not be viewed in isolation; rather, a policy's meaning must be determined by examining the entire instrument. *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002). Policy provisions that are clear and unambiguous should be enforced as written. *Chacon v. American Family Mut. Ins.*, 788 P.2d 748, 750 (Colo. 1990). Where a term in an insurance policy is ambiguous, meaning it is susceptible to more than one reasonable interpretation, the Court will

6

construe the term against the drafter and in favor of providing coverage to the insured. *Sachs v. Am. Family Mut. Ins. Co.*, 251 P.3d 543, 546 (Colo. App. 2010).

American Family argues that it did not owe a duty to defend because the allegations in the Underlying Complaint fall within the Policy's exclusions, which "singly and collectively exclude coverage for property damage which is limited to defects in the insured's own work product."  (ECF No. 25-1 at 9-11.)  American Family specifically points to exclusions 2.k, 2.l, and 2.m which provide that the Policy does not apply to "Property damage" to "Your product" or "Your work".  (ECF No. 26-1 at 34.)

## A.    Property Damage

"Faulty workmanship can constitute an occurrence that triggers coverage under a [commercial general liability] policy if (1) the property damage was not caused by purposeful neglect or knowingly poor workmanship, and (2) the damage was to non-defective portions of the contractor's or subcontractor's work or to third-party property." *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1286-87 (10th Cir. 2011).  The Court presumes that Cool Sunshine did not purposefully or knowingly install an inferior compressor at the Residence, thereby fulfilling the first prong. However, as set forth below, there is no allegation of "property damage" to any "non-defective portion" of Cool Sunshine's work.  Thus, the Court finds that neither the CDARA Letter nor the Underlying Complaint contain allegations that could reasonably come within the coverage of the Policy.

The Policy defines "[p]roperty damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured."  (ECF No. 26-1 at 41.)  "[T]he existence of property

damage is a threshold issue," and thus must be considered before application of any other exclusions. *See Greystone*, 661 F.3d at 1287 n.11.

The Colorado Court of Appeals has held that the cost to repair and replace a roof that was installed in a manner that did not meet code was not "property damage". *TCD, Inc. v. Am. Family Mut. Ins. Co.*, 296 P.3d 255, 258 (Colo. App. 2012) (allegations regarding the failure to perform work sound in contract and tort law and do not fit within the fair, natural, and reasonable meaning of "property damage."). Other courts interpreting the same definition of "property damage" in commercial liability insurance policies have agreed. *See Auto-Owners Ins. Co. v. Pozzi Window Co.*, 984 So.2d 1241, 1248 (Fla. 2008) (cost to replace a defective window is not property damage); *West Orange Lumber Co., Inc. v. Ind. Lumbermans Mut. Ins. Co.*, 898 So.2d 1147, 1149 (Fla. App. 2005) (cost to replace cedar siding that was the wrong grade was not property damage).

Also, the cost to repair a defectively installed product does not constitute "property damage" unless the defective product causes some damage to the property outside of the cost to replace the defective product. *See, e.g., Travelers Indem. Co. of Am. v. Moore & Assoc.*, 216 S.W.3d 302, 310 (Tenn. 2007) ("[W]e hold that claims alleging only damages for replacement of a defective component or correction of a faulty installation do not allege 'property damage.'"); *St. Paul Fire & Marine Ins. Co. v. Coss*, 80 Cal. App. 3d 888, 892 (Cal. App. 1978) ("We do not think that the mere inclusion of a defective component, where no physical harm to the other parts results therefrom, constitutes 'property damage' within the meaning of the policy."). For example, in *Colorado Pool Systems, Inc. v. Scottsdale Insurance Company*, 317 P.3d

8

1262 (Colo. App. 2012), the plaintiff was hired to construct a swimming pool at a community center.  As originally constructed, the pool did not pass inspection.  The pool had to be replaced, as did a deck, sidewalk and retaining wall that had been built nearby.  *Id.* at 1271.  The Colorado Court of Appeals held that there was no coverage for replacement of the defective pool, but that the plaintiff was covered for the consequential damages, *i.e.* replacement of the deck, sidewalk, and retaining wall.  *Id.*

In this case, the CDARA Letter and the Underlying Complaint both allege that Cool Sunshine installed an inferior compressor that is too loud and does not meet the functional requirements that they were promised.  (ECF Nos. 26-2 & 26-3.)  There is no allegation that the inferior compressor harmed any part of the Residence; the only harm linked to Cool Sunshine is that directly related to the inferior compressor.  As such, the Court finds that there is no allegation of "property damage" within the meaning of the Policy.

## B.    Exclusions for Insured's Work

Moreover, even if installation of an inferior compressor was "property damage" under the Policy, the Court concludes that no coverage exists for the claims asserted in the Underlying Complaint because of the exclusions related to damage to the insured's own work.  Exclusion 2.l provides that the Policy does not cover "'Property damage' to 'your work' arising out of it or any part of it . . ."  (ECF No. 26-1 at 34.)  Exclusion 2.m excludes coverage for "'Property damage' to 'impaired property' or property that has not been physically injured, arising out of . . . [a] defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'."  (*Id.*)  "Your product" means "any foods or products . . . manufactured, sold, handled, distributed, or disposed of by you."

9

(*Id.* at 41.)  "Your work" is defined as "(1) Work operations performed by you or on your

behalf and (2) Materials, parts or equipment furnished in connection with such work or

operations."  (*Id.*)  Both "your product" and "your work" include all "[w]arranties or

representations made at any time with respect to the fitness, quality, durability,

performance or use of" the product or work.  (*Id.*)

American Family contends that these provisions exclude coverage for the work

performed, the products installed, and the warranties given by Cool Sunshine.  (ECF

No. 25-1 at 10-11.)  The Court agrees.  These exclusions have routinely been held to

preclude coverage for work performed by the insured, including defective or inferior

work and the warranties made thereon.  *See, e.g., Wardcraft Homes, Inc. v. Employers

Mut. Cas. Co.*, 2014 WL 4852117, at *6-7 (D. Colo. Sept. 29, 2014) (exclusions bar

coverage for claims related to improperly installed cabinetry and heat in the flooring);

*Crossen v. Am. Family Mut. Ins. Co.*, 2010 WL 2682103, at *7 (D. Colo. July 7, 2010)

(contractor's defective sealant placed on floor not covered by general commercial

liability policy).

The reason for this rationale is that "[t]he purpose of a commercial general

liability policy is to protect the insured from liability for damages when his own defective

work or product damages someone else's property."  *Farmington Cas. Co. v. Duggan*,

417 F.3d 1141, 1142 (10th Cir. 2005).  "Damage to an insured's own work resulting from

his faulty workmanship on it is usually covered by a performance bond, not a

commercial general liability policy."  *Id*.  Commercial liability policies are not intended to

protect the insured from unsatisfactory performance of a contract.  *United Fire & Cas.

Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 959 (10th Cir. 2011) ("The risk

that an owner might reject performance as inadequate is a 'business risk' allocated by parties in contract, and is . . . not [covered by] general liability insurance intended to provide coverage for injuries or damage resulting from 'accidents'.") (quoting *DCB Constr. Co. v. Travelers Indem. Co. of Ill.*, 225 F.Supp.2d 1230, 1231 (D. Colo. 2002)); *see also* Lee R. Russ & Thomas F. Segalla, 9 Couch on Insurance § 129:11 (3d ed. 1995 & Supp. 2005) ("Most policies of commercial general liability insurance exclude the insured's faulty workmanship from coverage.  The rationale for such exclusions is that faulty workmanship is not an insurable 'fortuitous event,' but a business risk to be borne by the insured.").

As noted above, the CDARA Letter and the Underlying Complaint allege that Cool Sunshine installed a compressor that emits more sound than is permissible under the code and is insufficient to run the system installed in the Residence.  (ECF Nos. 26-2 & 26-3.)  This damage was not caused by any outside event that would trigger coverage under the Policy; rather, the choice of which kind of compressor to install at the Residence was a business risk that is borne by Cool Sunshine, and not covered under the Policy.

## C.    Other Allegations in the Underlying Complaint

Cool Sunshine argues that American Family is reading the Underlying Complaint too narrowly, and that the Court should focus on the fact that the Underlying Complaint brings claims for breach of implied warranty and negligence against Ellis and all of the subcontractors, including Cool Sunshine.  (ECF No. 29 at 8.)  Specifically, Cool Sunshine contends that the Underlying Complaint "alleges both 'property damage' and 'bodily injury' against **all** Defendants", and that these broad allegations bring the claims

11

within coverage of the policy.  (*Id.* at 9.)  However, Colorado courts have held that an underlying complaint's factual allegations, not its legal claims or conclusions, determine an insurer's defense obligations.  *See, e.g., Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 502 (Colo. 2004) ("To analyze the insurer's duty to defend, we consider whether the factual allegations in the underlying complaint trigger coverage under an insurance policy's terms."); *Gerrity Co., Inc. v. CIGNA Prop. & Cas. Ins. Co.*, 860 P.2d 606, 607 (Colo. App. 1993) ("It is, however, the factual allegations in the complaint, not the legal claims, that determine an insurer's duty [to defend.]").  "[C]onclusory allegations of consequential damages [do not] trigger a duty to defend."  *General Sec. Indem. Co. of Ariz. v. Mountain States Mut. Cas. Co.*, 205 P.3d 529, 537 (Colo. App. 2009).

The Underlying Complaint contains no factual allegations of harm directly caused by Cool Sunshine outside of the request to replace the inferior compressor.  Notably there is no specific allegation that the inferior compressors damage the Residence in any way, or caused the Homeowners any specific harm.  The Court finds that the conclusory allegations that all defendants—including Cool Sunshine—caused bodily injury and property damage are not sufficient to trigger American Family's duty to defend in this case.  *General Sec.*, 205 P.3d at 537.

Cool Sunshine also asserts that the Homeowners' allegation of bodily injury—specifically the Homeowners' emotional stress and anxiety.  (ECF No. 29.)  While these injuries are not specifically linked to Cool Sunshine, it could be inferred that the inferior compressor has contributed to these injuries.  American Family acknowledges that these physical injuries do not fall squarely within any of the Policy's exclusions.  (ECF No. 32 at 5.)  However, Colorado law establishes that "bodily injury"

12

in the context of a commercial liability policy does not include emotional distress. *Nat'l Cas. Co. v. Great Southwestern Fire Ins. Co.*, 833 P.2d 741, 746-47 (Colo. 1992).  As such, the Homeowners' claim for emotional distress does not invoke American Family's duty to defend under the Policy.

Finally, Cool Sunshine alleges that the cross-claim filed against it by Ellis invoked American Family's duty to defend.  (ECF No. 33 at 10.)  But there are no additional factual allegations against Cool Sunshine in the cross-claim.  Rather, Ellis contends that, to the extent it is liable on the claims asserted by the Homeowners in the Underlying Complaint, the subcontractor responsible for performing the work should also be held liable and should contribute to or indemnify Ellis against any judgment. (ECF No. 33-3.)  As the factual assertions in a pleading drive an insurer's duty to defend, and Ellis's cross-claim contains no additional facts related to Cool Sunshine, the Court concludes that Ellis's cross-claim does not affect the analysis as to whether American Family had a duty to defend Cool Sunshine against the Homeowners' claims.

Having considered all of the arguments raised by the parties, the Court concludes as a matter of law that the claims brought against Cool Sunshine by the Homeowners describe only situations which are within the Policy's exclusions.  Neither the CDARA Letter nor the Underlying Complaint assert any factual or legal basis on which American Family could be held liable for indemnification and, therefore, American Family had no duty to defend.  *TerraMatrix*, 939 P.2d at 486.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      Defendant American Family's Early Motion for Summary Judgment Regarding

the Duty to Defend (ECF No. 25) is GRANTED;

2.   Plaintiff Cool Sunshine Heating & Air Conditioning's Early Motion for Partial

Summary Judgment on the Duty to Defend the Underlying Lawsuit (ECF No. 27)

is DENIED.

Dated this 17th day of December, 2014.

BY THE COURT:

William J. Martínez
United States District Judge